IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMETRIUS BELL,** | |
| Plaintiff, | |
| v. | Case No. 24-cv-2587-NJR |
| **SERGEANT BRIDWELL, JEREMIAH BROWN, and LAWRENCE CORRECTIONAL CENTER,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Demetrius Bell, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this case for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Bell initially filed a letter with the United States District Court for the Central District of Illinois reporting constitutional violations he was allegedly experiencing on suicide watch at Lawrence. The letter was labeled a Complaint and transferred to this Court (Docs. 1, 2).

Upon further review by this Court, the letter failed to meet the requirements of Federal Rule of Civil Procedure 8 and did not qualify as a Complaint (Doc. 6). The Court directed Bell to file a formal Complaint if he wanted to proceed with his claims. But in light of the concerning allegations presented in his motion, the Court added Jeremiah Brown to the case, in his official capacity as warden of Lawrence, and directed him to respond to Bell's motion. Brown has now filed a response (Doc. 34). Bell recently filed a

1

"notice of default/indirect secrecy" (Doc. 38), which appears to respond to some of Brown's response.

In addition to his original motion, Bell later filed a motion requesting that IDOC preserve video footage from several dates (Doc. 28). Brown filed a response to the motion (Doc. 33), as well as an updated response (Doc. 39). Bell also filed a motion for counsel and request for additional time to file a formal pleading (Doc. 32).

### A. Motion for Preliminary Injunction

Bell's letter alleged that he was on suicide watch at Lawrence under conditions that were impacting his mental health and making him more suicidal (Doc. 6, p. 1). Although he had been on watch for two weeks at the time he submitted his letter, Bell argued that he had not been evaluated by mental health staff. He also was on medication, but the medication was not helping his condition (*Id.*). On suicide watch, the correctional officers did not make their required rounds, and Bell's emergency call button was defective (*Id.* at p. 2). The cell had exposed metal and concrete that Bell contemplated using for self-harm (*Id.*). Bell alleged that he had a broken nose and a spinal injury that were not being properly treated. Finally, Bell alleged that he was subjected to mace on several occasions when correctional officers sprayed mace in the unit. One such correctional officer, Sergeant Bridwell, also made sexual slurs towards Bell. Bell sought a transfer to a mental health treatment facility.

In light of the concerning nature of Bell's allegations, including the condition of his cell and his suicidal tendencies, the Court directed Warden Brown to respond to the

allegations. Brown was directed to provide information regarding Bell's current status, location, and his access to mental health services.

On January 31, 2025, Brown filed a response (Doc. 34). Brown noted that Bell was housed in the crisis unit from November 16, 2024, until December 20, 2024 (Doc. 34-2, p. 1). Bell was placed on crisis watch after an incident that occurred in protective custody (Doc. 34-5, p. 1). On November 16, 2024, during the morning count, inmates were informed that a female officer was in the housing unit for count (*Id*. at p. 2). When officers approached Bell's cell, he was touching himself inappropriately (*Id*. at pp. 2-3). After Bell was removed from his cell, he declared that he was in crisis (*Id*. at p. 4). A behavioral health technician evaluated Bell and noted that Bell reported suicidal and homicidal thoughts (*Id*.). Bell was then placed on crisis watch (*Id*.).

Major Ryan Erickson, an Administrative Major and Crisis Unit Supervisor at Lawerence, stated that Bell was housed in crisis cell Residence 5, B-Wing, Lower 4 (*Id*.). All cells are inspected for safety and security prior to an inmate being placed in the unit; Erickson noted that an inmate would not be placed in a cell with exposed materials that could be used for self-harm (*Id*.). Erickson further noted that the cell Bell was housed in while on watch is currently vacant, has no pending work orders, and is ready for occupancy (*Id*. at pp. 1-2).

Dr. Caitlin Cordova, the head of the mental health department, the mental health authority, and psychologist administrator at Lawrence, submitted a declaration about Bell's mental health care while on crisis watch (Doc. 34-1). Dr. Cordova noted that she is the crisis intervention team leader and trains all staff in crisis intervention (*Id*. at p. 1). She

reviewed Bell's mental health records and noted that he was diagnosed with an unspecified anxiety disorder and adjustment disorder with depression (*Id*. at p. 2). Bell was previously prescribed Buspirone and Abilify for his mental health conditions (*Id*.). While on crisis watch, Bell was compliant with his medication regime except for five instances in mid-November when he refused medication. On November 27, 2024, he was prescribed Abilify to reduce his anxiety (*Id*.).

Dr. Cordova further stated that while on crisis watch, Bell had access to mental health care. Dr. Cordova stated that mental health personnel try to meet with patients daily for evaluations and counseling (*Id*.). The counseling sessions usually last 15 minutes and patients are allowed to discuss any issues that they are having at the time. Dr. Cordova noted that while on crisis watch, Bell was seen by mental health personnel on 25 occasions but refused to cooperate in those sessions on nine occasions (*Id*. at p. 3). Prior to his release from crisis watch on December 20, 2024, Bell was evaluated on several occasions and mental health personnel determined that he was using appropriate coping mechanisms and no longer displayed ideations of self-harm (*Id*. at p. 2). Dr. Cordova noted that as of January 30, 2025, Bell was still off crisis watch and his mental health appeared stable (*Id*. at p. 3). He was evaluated by Mental Health Professional Elisa March on January 17, 2025, and he had no thoughts of self-harm and exhibited good coping skills and positive thoughts (*Id*. at pp. 3-4).

After his release from crisis watch, Bell was placed in restrictive housing from December 20, 2024, until January 18, 2025 (Doc. 34-3, p. 1; 34-4, p. 1). He was then transferred to protective housing where he remained at the time of Brown's response

4

(*Id.*). While in restrictive housing, staff inspected his cell for security and safety issues (*Id.*). The only issue with his cell was a partially burnt outlet cover, and a work order was submitted for the outlet (*Id.* at pp. 1-2).

The Court finds that Bell is not entitled to the injunctive relief he seeks. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary

injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . " and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

Bell is not entitled to the injunctive relief he seeks because he has failed to demonstrate a likelihood of success on the merits. Bell has not yet filed a formal Complaint that states a viable claim. Although the Court ordered Bell to file a formal Complaint if he wanted to pursue his claims, Bell has yet to file a viable pleading. He recently filed a motion for counsel and sought additional time to file a Complaint. But he currently lacks a viable pleading in this case. Because Bell lacks a viable claim, he has no likelihood of success on the merits.

Even if Bell had filed a formal Complaint, he is not currently housed in the cell at issue in his motion. Bell's letter complained, in part, about the safety of his cell on crisis watch. He argued that the cell had exposed metal and concrete materials that he could use to self-harm and he was having thoughts of self-harm at the time he filed his motion. But Bell is no longer on crisis watch. He was released from crisis watch on December 20, 2024, after being evaluated by mental health personnel and deemed stable. He no longer had thoughts of self-harm and demonstrated appropriate coping mechanisms. He was further evaluated on January 17, 2025, and again showed no signs of suicidal thoughts and was continuing to exercise good judgment and coping skills. There is simply no evidence in the record to suggest that Bell is currently at risk by the conditions of his cell

or his mental health. Thus, the Court finds that an injunction is not warranted at this time, and his motion is **DENIED**.

### B. Motion for Preservation of Video Footage

In addition to a motion for injunctive relief, Bell recently filed a motion to preserve video footage from November 18, 2024, as well as from several dates in December 2024 (Doc. 35). In an updated response, Brown offered the declaration of Ryan Schoon, the litigation coordinator at Lawrence, who stated that video footage from an incident involving Bell on November 18, 2024, was preserved because there was an open investigation into the incident (Doc. 39-1). But all of the video from Bell's other requested dates was already deleted due to the limited storage capacity and record retention policies for video footage at the prison (*Id.* at p. 1). Pursuant to that policy, the video footage is overwritten every 10-14 days. Thus, the requested video footage for mid-December was overwritten before Bell submitted his request. Bell's motion for video footage is **DENIED as moot**.

### C. Motion for Counsel and Extension of Time

Finally, Bell filed a motion requesting the assignment of counsel and additional time to file his formal Complaint (Doc. 32). Bell argues that he needs counsel to file a formal Complaint because he lacks knowledge regarding statutes, codes, and civil procedures (*Id.*).

A district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). There is no constitutional or statutory right to counsel for a civil litigant, however. *Stroe v. Immigration and Naturalization Services*, 256 F.3d 498, 500

7

(7th Cir. 2001); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). Recruitment of counsel lies within the sound discretion of the trial court. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)).

In determining whether to recruit counsel, the Court is directed to make a two-fold inquiry: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654 (citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). The first prong of the analysis is a threshold question. If a plaintiff has made no attempt to obtain counsel on his own, the court should deny the request. *See Pruitt*, 503 F.3d at 655.

Bell has failed to meet his threshold burden of trying to obtain counsel on his own. He fails to note any attempts to obtain counsel, nor has he indicated that he has been unable to contact counsel on his own. Even if Bell had met his threshold burden, the Court finds that Bell is capable of filing a formal Complaint on his own. His filings have been well written and easy to understand. The Court finds Bell capable of setting forth his factual allegations and claims. His pleading need only set forth "a short and plain statement of the claim showing that [he] is entitled to relief." FED. R. CIV. P. 8(a)(2). To aid Bell in submitting a viable Complaint, the Clerk of Court is **DIRECTED** to send Bell a Section 1983 Complaint form. The deadline to submit a formal Complaint is extended to **March 31, 2025**.

Should Bell seek the assignment of counsel in the future, the Court directs Bell to (1) first contact at least **three** attorneys regarding representation *in this case* prior to filing

another motion, (2) include in the motion the name and addresses of at least three attorneys he has contacted, and (3) if available, attach the letters from the attorneys who declined representation. If he is unable to contact an attorney, he should include a statement explaining why he cannot meet this threshold requirement. Because Bell failed to demonstrate that he attempted to obtain counsel on his own, his motion for counsel (Doc. 32) is **DENIED**.

    **IT IS SO ORDERED.**

    **DATED: February 28, 2025**

                                                   **NANCY J. ROSENSTENGEL**
                                                   **Chief U.S. District Judge**